In the Matter of Disciplinary Proceedings Against
James M. DeGracie, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

James M. DeGracie, Respondent.

Supreme Court

*No. 02–2231–D. Decided April 23, 2004.*

2004 WI 44

(Also reported in 678 N.W.2d 252.)

¶ 1. PER CURIAM.   We review the recommendation of the referee that the license of Attorney James M. DeGracie be suspended for eight months as discipline for his professional misconduct. That misconduct as alleged in the Office of Lawyer Regulation's (OLR) complaint filed against Attorney James M. DeGracie on August 22, 2002, involved six counts of misconduct with respect to his representation of two clients as well as DeGracie's response to the OLR investigation of grievances filed by those clients. Attorney David R. Friedman was appointed as referee in this matter. After a telephone conference of which DeGracie had notice but did not participate, the referee granted the OLR's motion for default judgment based on DeGracie's failure to appear or participate. In the report the referee has filed in this court, the referee concluded, that DeGracie should be deemed to have committed the acts of misconduct as alleged. The referee recommends that DeGracie's license to practice law in this state be suspended for eight months and that he be ordered to pay the costs of this proceeding which total $586.23.

¶ 2.   We determine that the misconduct as established in this disciplinary proceeding warrants a suspension of DeGracie's license to practice law in this state for eight months. We also agree that DeGracie should be required to pay the costs of this disciplinary proceeding in the amount specified.

¶ 3.   The respondent, James M. DeGracie, was admitted to practice law in this state on July 6, 1990, and has not previously been the subject of professional discipline. His license to practice law, however, was suspended in 2002 for his failure to pay bar dues and for

noncompliance with continuing legal education requirements. Although he initially practiced in Black River Falls, DeGracie subsequently moved and is reportedly currently residing in California.

¶ 4.   After the OLR filed its complaint along with an order to answer in this court, Attorney David R. Friedman was appointed as referee in the matter. By certified mail, return receipt requested, the referee sent a notice of hearing to DeGracie's Black River Falls office as well as his California address. The certified letter to the California address was returned but the referee thereafter received a signed certified mail return receipt card signed by one Nancy J. DeGracie. Ms. DeGracie signed for the certified letter that contained notice of the telephone conference the referee had scheduled.

¶ 5.   On December 18, 2002, the referee conducted the scheduled telephone hearing and although the OLR appeared, DeGracie did not call in nor otherwise appear. Based on DeGracie's failure to answer OLR's complaint and his failure to appear at the hearing, the referee granted the OLR's motion for summary judgment.

¶ 6.   Thereafter the referee filed his report in this court regarding DeGracie's misconduct as alleged in the OLR's complaint. The OLR's complaint alleged, and the referee has now found, the following acts of misconduct by DeGracie involving two clients and his failure to respond to the OLR investigations.

## CLIENT W.O.—COUNTS ONE AND TWO

¶ 7.   The OLR complaint alleged that in 1994 W.O. was convicted of a criminal offense in Jackson County Circuit Court and placed on probation; in 1999 W.O.'s probation was revoked and he was sentenced to two years in prison. Subsequently, on April 13, 2000, De-

Gracie was appointed as W.O.'s appellate public defender. On April 23, 2000, W.O. sent a letter to DeGracie asking for speedy attention to W.O.'s postconviction remedies and requesting that DeGracie file a motion seeking modification of the sentence. In that letter W.O. stated that his mandatory release date would be December 12, 2000; he asserted that he wanted to appear before the sentencing judge as soon as possible. DeGracie did not respond to W.O.'s letter.

¶ 8.    Thereafter, on May 12, 2000, pursuant to a request from the Office of the State Public Defender (SPD), DeGracie received the court record and the transcripts in W.O.'s case. On May 29, 2000, W.O. wrote to the SPD because he had not heard from DeGracie. On June 16, 2000, DeGracie met with W.O. DeGracie told W.O. that if they were successful on appeal, it was possible that W.O. could be re-sentenced for more time than originally imposed. After this meeting, W.O. anticipated that he would soon be returned to Jackson County for a hearing on his motion for sentence modification.

¶ 9.    During the fall of 2000 W.O. attempted to make numerous collect calls to DeGracie but DeGracie's telephone was blocked from receiving such calls. On September 12, 2000, W.O. wrote to DeGracie complaining that he had heard nothing from him since their meeting on June 16, 2000; W.O. asked DeGracie to respond but again DeGracie did not reply.

¶ 10.    On September 26, 2000, W.O. again wrote to the SPD complaining about DeGracie's lack of communication with him. Deputy First Assistant State Public Defender (ASPD) Kenneth Lund then wrote to DeGracie on October 9, 2000, stating that W.O. had complained about DeGracie's representation; ASPD Lund asked DeGracie to respond to W.O. and to provide a copy

of that response to ASPD Lund. DeGracie did not respond to ASPD Lund's letter.

¶ 11.   On October 19, 2000, W.O. wrote to ASPD Lund and asked him to withdraw W.O.'s appeal. W.O. explained that he was approaching his mandatory release date and feared that if he were successful on appeal, he might be re-sentenced to the maximum penalty of six years in prison.

¶ 12.   On November 9, 2000, ASPD Lund sent a follow-up letter to DeGracie pointing out that DeGracie had not responded to ASPD Lund's October 9, 2000, letter. Once again, ASPD Lund asked DeGracie to reply to W.O. and to provide a copy of that response to ASPD Lund; again DeGracie did not respond.

¶ 13.   Thereafter, W.O. filed a grievance against DeGracie. Although DeGracie provided an initial written response to that grievance, by letter dated September 10, 2001, the OLR staff requested additional information from DeGracie relating to W.O.'s grievance. DeGracie did not reply to this request for additional information.

¶ 14.   On October 2, 2001, the OLR staff sent a follow-up certified letter to DeGracie requesting his response to the September 10, 2001, letter. Although DeGracie signed the return receipt for this certified letter, he did not reply. DeGracie never withdrew from representation of W.O. nor did he submit any closing documents to the SPD about that representation.

¶ 15.   In response to subsequent inquiries from the OLR district committee investigator, DeGracie stated that he intended to wrap up his remaining files, close his legal practice in Wisconsin and move to California. DeGracie said, however, that he wished to retain his Wisconsin license.

¶ 16. Based on this course of conduct, the OLR complaint alleged, and the referee has now found, that DeGracie committed the following acts of misconduct:

Count One: By failing to communicate in any manner with W.O. after June 16, 2000; by failing to respond to W.O.'s September 12, 2000, letter; and by failing to communicate with W.O. after DeGracie received letters from ASPD Lund in the fall of 2000 that indicated that W.O. had requested assistance from the SPD when he had been unable to reach DeGracie, DeGracie failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

Count Two: By failing to respond to two grievance investigative letters sent to him by the OLR in September and October of 2001, DeGracie failed to cooperate with an OLR investigation, in violation of SCR 21.15(4); failed to answer further investigative questions, in violation of SCR 22.03(2); and willfully failed to provide relevant information during a grievance investigation, in violation of SCR 22.03(6).

## CLIENT R.E.—COUNTS THREE THROUGH SIX

¶ 17. The OLR complaint alleged that in April 1998 R.E. was convicted of a criminal offense and placed on probation; later, following a probation violation, R.E. was sentenced in May 1999 to five years in prison. R.E. filed a notice of intent to appeal his conviction and in May 2000, DeGracie was appointed by the SPD to represent R.E. in his attempts to obtain sentence modification and postconviction relief.

¶ 18. DeGracie, however, failed to file any pleadings on R.E.'s behalf; DeGracie also failed to respond to R.E.'s letters, accept some of R.E.'s collect calls, or return a copy of R.E.'s file to him.

¶ 19. On April 6, 2001, ASPD Lund wrote to DeGracie enclosing a copy of the letter ASPD Lund had received from R.E. regarding DeGracie's inaction in R.E.'s case. ASPD Lund asked DeGracie to reply to R.E. and provide a copy of that response to ASPD Lund; DeGracie did not do so.

¶ 20. On June 7, 2001, ASPD Lund sent a follow-up letter to DeGracie stating that he received another letter of complaint from R.E.; again ASPD Lund asked DeGracie to write to R.E. and copy ASPD Lund with the response.

¶ 21. On August 1, 2001, R.E. wrote to ASPD Lund stating that he was "getting the same runaround" from DeGracie who had told R.E. that he was waiting for a court date. R.E. also reported that DeGracie claimed that he had mailed a copy of the file to R.E.

¶ 22. On August 7, 2001, ASPD Lund telephoned DeGracie. DeGracie told Lund that he had twice sent copies of the file to R.E. DeGracie also told ASPD Lund that he had now gathered the information he needed and would be filing a motion for sentence modification on R.E.'s behalf later that week. ASPD Lund then informed DeGracie that because DeGracie had allowed time deadlines to expire, the SPD was not authorized to pay for the sentence modification motion. DeGracie replied to ASPD Lund that he would nevertheless file the motion and complete the work pro bono. ASPD Lund then sent R.E. a letter detailing that conversation with DeGracie.

¶ 23. After three weeks had elapsed since their telephone conversation, ASPD Lund wrote to DeGracie on August 27, 2001, stating that if Lund did not receive a copy of a filed motion on behalf of R.E. from DeGracie within a week, Lund would take steps to decertify DeGracie from taking SPD cases.

¶ 24. On September 10, 2001, First Assistant State Public Defender Joseph Ehmann telephoned De-Gracie regarding R.E.'s case. DeGracie told Ehmann that he had filed the sentence modification motion on behalf of R.E. and that he would send a copy of that motion to the SPD's office. Thereafter Ehmann telephoned DeGracie on September 17, September 25, and October 9, 2001, and each time DeGracie reported to Ehmann that he had filed the motion on behalf of R.E.

¶ 25. On December 7, 2001, Ehmann wrote to DeGracie stating that the phone calls and letters throughout September, October, and November 2001, revealed that DeGracie had not followed through regarding his obligation to his client and that DeGracie had never sent a copy of any motion to the SPD as he had promised. Ehmann asked DeGracie for information about what he had done in R.E.'s case.

¶ 26. Subsequently, R.E. filed a grievance with the OLR against DeGracie. An OLR intake investigator spoke by telephone with DeGracie on October 8, 2001. DeGracie told the investigator that R.E.'s case involved a motion for re-sentencing and that the case was still pending; DeGracie also acknowledged that he had received a letter from ASPD Lund.

¶ 27. DeGracie told the OLR investigator that he was planning to withdraw from the practice of law in Wisconsin in the near future and that R.E.'s matter had been set aside and that DeGracie's secretary had copied R.E.'s file and the file would be sent to R.E. soon. DeGracie also told the investigator that he would complete the sentence modification motion and then move to withdraw from R.E.'s case. DeGracie also said he would fax copies of the motion for sentence modification to the OLR when the motion was filed along with

a cover letter to R.E. returning his file. The OLR did not receive the items as promised from DeGracie.

¶ 28. On October 31, 2001, the OLR sent a copy of R.E.'s grievance to DeGracie and requested his written response on or before November 23, 2001; again DeGracie did not respond. Then on November 27, 2001, the OLR sent letters to DeGracie by first-class mail and by certified mail requesting that his response be post-marked no later than December 7, 2001; these letters reminded DeGracie of his duty to cooperate with the OLR investigation. Again DeGracie did not reply.

¶ 29. The OLR's investigation of the R.E. grievance was thereafter assigned to an OLR district committee and on March 6, 2002, DeGracie told the district committee investigator that he was wrapping up his practice and that he would not deny any of the misconduct allegations relating to R.E.'s grievance.

¶ 30. Subsequently, on March 12, 2002, the attorney who shared office space with DeGracie in Black River Falls told the OLR that DeGracie had closed his practice on March 6, 2002, and had moved to California leaving no forwarding address or telephone number. Several months later, that attorney's office informed the OLR of a forwarding address for DeGracie in California.

¶ 31. Based on this course of conduct, the OLR complaint alleged, and the referee has now found, that DeGracie committed the following acts of misconduct:

> Count Three: By failing to take any action on R.E.'s behalf, despite receiving numerous inquiries from R.E. and the SPD, DeGracie failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.
>
> Count Four: By failing to respond to letters from R.E., and by failing to communicate with R.E. after receiving

648

letters from the SPD indicating that R.E. had requested assistance from that agency regarding his case, DeGracie failed to keep a client reasonably informed about the status of a matter and failed to promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

Count Five: By telling ASPD Ehmann by telephone on September 10, September 17, September 25, and October 9, 2001, that he had filed a motion on R.E.'s behalf, when in fact, DeGracie had not done so, DeGracie engaged in conduct involving dishonestly, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).

Count Six: By failing to respond to two grievance investigative letters sent to him by the OLR in October and November 2001, DeGracie willfully failed to cooperate with the OLR in the investigation of grievances, in violation of SCR 21.15(4); failed to answer further investigative questions, in violation of SCR 22.03(2); and willfully failed to provide relevant information during a grievance investigation, in violation of SCR 22.03(6).

¶ 32. Based on this course of misconduct, the referee concluded that the OLR's recommendation for a six-month suspension of DeGracie's license to practice law in this state was an inadequate sanction for his misconduct. The referee reasoned that because the liberty of two of DeGracie's clients was at stake, and because the clients and public had the right to expect DeGracie to be honest and to perform his duties, an eight-month suspension of DeGracie's license was a more appropriate sanction in order to "impress on DeGracie what his lies did to the clients."

¶ 33. We adopt the findings of fact and conclusions of law set forth in the referee's report and we agree with the referee and determine that the seriousness of DeGracie's misconduct as established in this

649

proceeding warrants a suspension of his license to practice law in this state for a period of eight months. We also agree and direct that DeGracie be ordered to pay the costs of this disciplinary proceeding now totaling $586.23.

¶ 34. IT IS ORDERED that the license of James M. DeGracie to practice law in Wisconsin is suspended for a period of eight months commencing as of the date of this opinion.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this opinion, James M. DeGracie pay to the Office of Lawyer Regulation the costs of this proceeding totaling $586.23, providing that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within the time, the license of James M. DeGracie to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 36. IT IS FURTHER ORDERED that if he has not already done so, James M. DeGracie must comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law has been suspended.